# IN THE COURT OF APPEALS OF IOWA

No. 23-1018
Filed September 13, 2023

**IN THE INTEREST OF J.M., L.M., R.M., and M.M.,**
**Minor Children,**

**D.M., Father,**
 Appellant,

**B.M., Mother,**
 Appellant.

_____

Appeal from the Iowa District Court for Clay County, Andrew Smith, District

Associate Judge.

A mother and father separately appeal the termination of their parental

rights to four sons.  **AFFIRMED ON BOTH APPEALS.**

Lisa K. Mazurek of Miller Miller Miller PC, Cherokee, for appellant father.

Michael H. Johnson of Johnson Law Firm, Spirit Lake, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney

General, for appellee State.

Tyler J. Alger of Sandy Law Firm, P.C., Spirit Lake, attorney and guardian

ad litem for minor children.

Considered by Tabor, P.J., and Badding and Buller, JJ.

**TABOR, Presiding Judge.**

The mother and father of four boys—ranging in age from seven to fifteen—appeal the juvenile court's termination of their parental rights. The mother, Brittany, alleges the State did not make reasonable efforts to reunify the family. The father, Daniel, challenges the statutory grounds for termination. Both parents contend termination is not in the children's best interests. Like the juvenile court, we find the State made reasonable efforts to reunite the children with their parents while still protecting the children from harm. We also find the State offered clear and convincing evidence for termination under Iowa Code section 232.116(1) (2023), paragraphs (e) and (f). And because moving toward a more permanent living situation is in the children's best interests, we affirm the termination order.

## I. Facts and Prior Proceedings

Brittany and Daniel have four sons; R.M. is seven, M.M. is nine, L.M. is eleven, and J.M. is fifteen. The four boys are now divided between two homes. The older two reside with their maternal grandparents and the younger two reside with foster parents who have adopted three other children.

The family's troubles started in 2009. The Iowa Department of Human Services responded to a report of child abuse involving J.M. It was later reported that Brittany and Daniel were using methamphetamine, tampering with drug tests, and refusing to cooperate with services. Three similar reports finding drug abuse and neglect followed. In 2011, the department opened a child-in-need-of-assistance (CINA) case but closed it in 2012 because Brittany and Daniel were cooperating. The parents then moved out of the state with the boys.

When they returned to Iowa in 2019, the children went into a temporary guardianship with their paternal grandmother because of concern that Brittany and Daniel were using drugs. Despite that concern and without permission from the department, the paternal grandmother allowed Brittany to move in with her and the children. What's more, the department confirmed that the paternal grandmother was physically abusing the children, leading to another CINA adjudication in 2020. Later that year, Brittany bought a home, and the children were returned to her custody. Daniel was in prison at that time. Upon his release, he moved in with Brittany and the children.

Things started going downhill again in late 2021. Given the parents' incarcerations, continued drug use, and refusals to cooperate with the case plan, the children were removed again and moved to their current placements.

All those disruptions have taken a toll. The younger children's therapists recommended no contact with the parents as the children become angry and upset after talking to them. The therapists also urged that the two older boys have no contact with the younger boys—for now—with a goal of starting interactions when the siblings gain more stability. Both parents have had minimal contact with the older two boys.

Reaching back fourteen years, the department has provided over thirty services to reunite the family. They include co-parenting curriculum, supervised visitation, mental-health and rehabilitation programs, and relative guardianship. Despite these efforts, Brittany and Daniel have been inconsistent in following their case plans, sporadic in accessing treatment, and dishonest about drug testing. When the court prepared to address all of these issues in a February 2023

permanency hearing, neither Brittany nor Daniel showed up. At the close of the permanency hearing, the court directed the State to petition for termination.

In June, the juvenile court terminated the parental rights of both Brittany and Daniel under Iowa Code section 232.116(1), paragraphs (e) and (f) with respect to all four children. Both parents seek a reversal of the order terminating their rights.[1]

## II. Discussion

In deciding termination cases, courts must consider a three-prong statutory scheme. First, we consider the grounds for termination under Iowa Code section 232.116(1). *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). If the State meets those grounds, then we must decide whether termination is in the children's best interests under section 232.116(2). *Id.* Lastly, we consider any exceptions in section 232.116(3). *Id.* at 220. But we need only address those issues raised by the parents on appeal. *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020).

### A. Grounds for Termination and Reasonable Efforts

Brittany contends the State failed to make reasonable efforts in helping her maintain significant and meaningful contact with the four boys. Taking a slightly different tack, Daniel argues he maintained significant and meaningful contact with all four boys to the extent that he was able, precluding termination under Iowa Code section 232.116(1)(e).[2] We address the mother's claim first.

---

[1] We review appeals from termination of parental rights de novo. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "[W]e give weight to the trial court's findings of fact, especially when considering the credibility of witnesses," but we are not bound by those findings. *Id.*

[2] In his petition on appeal, Daniel briefly argues that the court wrongly terminated his rights under paragraph (f) because his incarcerated status does not bring him

Under Iowa Code section 232.116(1)(e)(3), the court may terminate parental rights if "[t]here is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so."[3] This element requires parents to make "a genuine effort to complete the responsibilities prescribed in the case permanency plan." *In re T.S.*, 868 N.W.2d 425, 437 (Iowa Ct. App. 2015).

Brittany does not dispute the State's proof of this element. Instead, she argues that neither paragraph (e) nor (f) of Iowa Code section 232.116(1) should have been grounds for termination when the State did not fulfill its reasonable-efforts requirement. Underscoring her argument on significant and meaningful contact, Brittany contends that the court erred in terminating her rights because "all visitation was suspended in October 2022."

But lack of visitation does not always equal a lack of reasonable efforts. "While visitation is 'an important ingredient to the goal of reunification,' it is 'only one element in what is often a comprehensive, interdependent approach to reunification.'" *In re J.K.*, No. 12-0196, 2012 WL 1067080, at *2 (Iowa Ct. App.

---

"within a definitional ground" for a CINA finding. We reject his claim. The test under section 232.116(1)(f)(4) is whether children can be safely returned to the parent's custody at the time of the termination hearing. *In re W.M.*, 957 N.W.2d 305, 313 (Iowa 2021). Daniel's incarceration at the time of the termination hearing prevented the children's return to his custody. *See id.*

[3] The statute defines "significant and meaningful contact" as "the affirmative assumption by the parents of the duties encompassed by the role of being a parent." Iowa Code § 232.116(1)(e)(3). Those include "financial obligations" along with "continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, [and] a genuine effort to maintain communication with the child." *Id.* Bottom line, the parents must "establish and maintain a place of importance in the child's life." *Id.*

Mar. 28, 2012) (quoting *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App.1996)). Parents must show they are progressing toward possible visitation in the future, even if visitation is restricted at that time. *See id.* at *2–3.

Brittany has not shown progress toward possible visitation. She has spoken to L.M. on the phone but has not talked to the other three boys. The oldest son wanted no contact. And the guardian ad litem and therapists recommend no contact with the younger two boys. Brittany did attend a therapeutic session with L.M., and it seemed to go well. But despite this step, Brittany continued to dodge drug tests, failed to attend meetings, and refused to set meeting dates with the department. She also did not attend the permanency or termination hearings.

True, the State must make reasonable efforts to reunify families to meet its burden of proof for termination. *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017). But reunification must also be safe. *Id.* The record shows it was not safe here. Brittany self-reported methamphetamine use as of March 2023, she continued to avoid drugs tests, and the boys exhibited destructive behaviors after talking to her. Further, Brittany did not object to her case plan. Nor did she request more or different services to aid her reunification with her boys, which is also required of parents when asserting the State did not make reasonable efforts. *See C.B.*, 611 N.W.2d at 495.

We turn now to Daniel's claim. While incarcerated, Daniel has talked to the boys on the phone and has written them letters. He has engaged in services as much as he has been able. His last date of drug use was in February 2023. But even considering those positive factors, we find that Daniel has not maintained significant and meaningful contact with the boys nor has he made reasonable

efforts to do so despite his incarceration. While it's true Daniel has been cooperating with the department and has tried to contact all four boys, this progress was recent. Before his incarceration, he was still using drugs. And earlier he failed to participate in programming offered by the department. This conduct was not the type of "reasonable efforts to resume care" required to avoid termination under paragraph (*e*). *See In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021). The State proved that Daniel failed to maintain significant and meaningful contact with his children.

### B. Children's Best Interests

Both Brittany and Daniel maintain that it is not in the children's best interests to terminate their parental rights. We consider their claims together as they raise similar points.

Even if termination is supported under the statutory grounds, we must consider whether termination is in the children's best interests. Children's safety and their need for a permanent home rank as top concerns when deciding their best interests. *In re J.E.,* 723 N.W.2d 793 (Iowa 2006) (Cady, J., concurring specially). Beyond the children's safety, we consider the best placement for furthering their long-term nurturing and growth and their physical, mental, and emotional condition and needs. Iowa Code § 232.116(2).

Following this framework, we find the evidence supports termination being in the boys' best interests. The behavior of all four boys improved in their current placements. According to their foster mother, having structure at home has improved both M.M.'s and R.M.'s social and academic performance at school. As for the older boys, the guardian ad litem reported that the grandparents were

ensuring that they engaged in trauma-focused therapy and also encouraged their participation in fishing, high school athletics, and other healthy activities.

On the other hand, neither parent offers a viable alternative placement. With Brittany still using drugs, the safety of the children would be put at jeopardy if they were placed with her. And with Daniel facing months in prison, he requests that a guardianship be set up with his mother. But the children faced physical abuse when in her care before. In their current placements, the children experience stability and routine, which is highly preferable to the turmoil that they have dealt with their entire lives.

Both parents decry the damage to the sibling relationships from being placed in separate homes.[4] Granted, it is not ideal that the brothers are separated. But the law allows separation if "placement together is not possible, or is not in best interest of the children." *In re J.H.*, No. 20-0081, 2020 WL 2988758, at *3 (Iowa Ct. App. June 3, 2020). And here, according to their therapist, having the younger brothers in a different placement than the older brothers is in their best interests. Given that evidence, we find termination of parental rights is in the children's best interests.

## C. Exceptions to Termination

Both Brittany and Daniel ask us to consider their strong bond with the children as an exception to termination under Iowa Code section 232.116(3)(c).

---

[4] Daniel separately contends that the juvenile court did not consider the "adoptability of the children" when deciding their best interests. His contention is too barebones to consider. *See In re M.G.*, No. 18-0650, 2018 WL 3912192, at *2 (Iowa Ct. App. Aug. 15, 2018). And besides, both current placements have shown interest in adoption and stated that, if appropriate, they would not keep the boys from contacting their biological parents or siblings.

Under that provision, parents must show by "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *W.M.*, 957 N.W.2d at 315. We do not discount the connections between the parents and their sons. The record reveals a particularly strong bond between Daniel and the two older boys. But neither parent has offered the clear and convincing evidence necessary to show that, on balance, termination would be more detrimental than the continuing uncertainty of waiting for Brittany and Daniel to become safe and stable parents. *See id.*

**AFFIRMED ON BOTH APPEALS.**